ISAAC D ZOREA
PO BOX 90844
ANCHORAGE, AK 99509
(907) 830-1385
IZOREA.LAW@GMAIL.COM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| GORDON T. BRINKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:26-cv-00      CI |
| | ) | |
| LW SURVEY INTERNATIONAL, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

COMES NOW, Gordon T. Brinker, the plaintiff above named, by and through his attorney, Isaac Derek Zorea, and for his complaint against the defendant, LW Survey International, Inc., complains and alleges as follows:

**I.  JURISDICTION AND VENUE**

1.1.    This Court has jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 626(c)(1) over plaintiff's ADEA claims, and supplemental jurisdiction under 28 U.S.C. § 1367(a) over state law claims.

Complaint for Damages and Injunctive Relief:
*Brinker v. L W Survey International, Inc.*                                    Page -1-

1.2.	Venue is proper under 28 U.S.C. § 1391(b) and 29 U.S.C. § 626(c)(1). Defendant maintains a registered agent and conducts business in Anchorage, Alaska. Plaintiff resided and was employed in Alaska.

1.3.	Plaintiff filed charge ASCHR No. J-25-102, dual-filed as EEOC No. 38A-2026-00010, on November 25, 2025. More than sixty days have elapsed.Plaintiff has satisfied the administrative exhaustion requirement under 29 U.S.C. § 626(d).

## II.  PARTIES

2.1.	Plaintiff Gordon T. Brinker is an individual residing in Wasilla, Alaska 99654. At the time of his termination, Mr. Brinker was 60 years old. Mr. Brinker is a licensed Alaska Professional Land Surveyor (License No. 10351) and holds a Certified Federal Surveyor certification (Certificate No. 1070).

2.2.	Defendant LW Survey International, Inc. is an Illinois business corporation with its principal mailing address at 3904 Grand Avenue, Duluth, Minnesota 55807. Defendant provides international surveying and dimensional control services.

2.3.	Defendant maintains its Alaska registered agent, Registered Agents Inc., at 821 N Street, Suite 102, Anchorage, Alaska 99501, for service of process.

2.4.	Defendant employs more than twenty employees and is subject to the Age Discrimination in Employment Act. Defendant is affiliated with Pulsar Operational Boundary, Inc., a Colorado corporation, and L.W. Survey Canada, ULC. William Harnisch serves as Chief Executive Officer of Pulsar Operational Boundary, Inc. and as a director and officer of defendant.

Complaint for Damages and Injunctive Relief:
*Brinker v. L W Survey International, Inc.*					Page -2-

## III. FACTUAL ALLEGATIONS

3.1.     Plaintiff Gordon T. Brinker was employed by defendant LW Survey International, Inc. from September 13, 2010, until his termination on August 24, 2025, a tenure of nearly fifteen years. At the time of his termination, Mr. Brinker was 60 years old and served as President of defendant company. Mr. Brinker held an Alaska Professional Land Surveyor license (License No. 10351) and a Certified Federal Surveyor certification (Certificate No. 1070). He was defendant's Lead Dimensional Control expert, specializing in module dimensional control and placement on large-scale industrial projects.

3.2.     Throughout his employment, Mr. Brinker performed his job duties in an exemplary manner. For the last six years preceding his termination, Mr. Brinker was defendant's most billable employee. He received annual cost-of-living adjustments to his salary in 2022, 2023, and 2024. Mr. Brinker had no performance issues or disciplinary actions documented in his personnel file during his fifteen-year tenure. In the five months immediately preceding his termination, Mr. Brinker was fully billable on a major project in Indiana.

3.3.     Mr. Brinker's employment was governed by written employment agreements executed on January 1, 2021, and subsequently amended and restated effective March 31, 2022. The agreements were signed by Mr. Brinker and William Harnisch, Chief Executive Officer of Pulsar Operational Boundary, Inc., defendant's parent company. The agreements expressly stated that employment was at-will but required written notice for termination by either party.

3.4.     Under the employment agreements, Mr. Brinker's annual base salary was $244,544.30, payable in 26 equal installments. The agreements contained a salary non-reduction clause providing that Mr. Brinker's annual base salary "shall not be reduced after any increase

Complaint for Damages and Injunctive Relief:
*Brinker v. L W Survey International, Inc.*                                          Page -3-

without Brinker's consent." The agreements also provided for annual cost-of-living adjustments based on the Consumer Price Index for All Urban Consumers (CPI-U).

3.5.    In addition to base salary, Mr. Brinker was entitled to compensation for project billable time exceeding 40 hours per calendar week, calculated at an hourly rate based on his annual base salary divided by 2,080 hours. The employment agreements also included provisions for Stock Appreciation Rights (SAR) equity units. Mr. Brinker was awarded up to five SAR units in L.W. Survey Canada, ULC, with specified basis values totaling approximately $230,000. The agreements expressly provided that if Pulsar terminated Mr. Brinker's employment without cause, all awarded units would immediately vest at the specified basis values.

3.6.    In May 2024, due to financial conditions at defendant company, Mr. Brinker's bi-weekly salary was temporarily reduced by fifteen percent from $10,347.77 to $8,795.60. The reduction was documented in a Change of Terms signed on May 9, 2024, which stated that Mr. Brinker's salary would be restored when he returned to billable fieldwork and was fully billable on a project, or when the company met profitability requirements and salaries were restored.

3.7.    On April 13, 2025, defendant issued a Change of Terms restoring Mr. Brinker's salary to the full rate of $10,658.20 bi-weekly, equivalent to $277,113.20 annually. The April 2025 Change of Terms stated that Mr. Brinker would "receive fully restored salary while 100% billable on Elly Lilly Project in Indiana." The document further provided that Mr. Brinker would "receive bonus pay in the amount of $133.23 per hour for all billable hours worked over 80 hours in a pay period." This salary restoration occurred just four months before Mr. Brinker's termination, demonstrating that he was meeting the performance and profitability expectations set by defendant.

Complaint for Damages and Injunctive Relief:
*Brinker v. L W Survey International, Inc.*                                          Page -4-

3.8. Beginning in or around October 2021, defendant hired Matt Furness to work in the dimensional control department. At the time Mr. Furness replaced Mr. Brinker in August 2025, Mr. Furness was 27 years old, creating a 33-year age gap between him and Mr. Brinker. Mr. Furness had approximately seven years of total surveying experience and approximately four and one-half years of dimensional control experience. Mr. Furness did not hold a Professional Land Surveyor license in the United States or Canada, nor did he hold a Certified Federal Surveyor certification.

3.9. Mr. Brinker was instructed by William Harnisch and Shaun Ewen, President of LW Survey Canada, to train Mr. Furness and other younger surveyors in dimensional control techniques. The training began on Mr. Furness's first day at the Canada LNG Project in Kitimat, British Columbia, and continued over several years. Defendant's stated purpose for this training was to transfer Mr. Brinker's expertise in dimensional control so that the company could pursue additional large-scale dimensional control projects. Mr. Brinker actively participated in this training, viewing it as an opportunity to expand defendant's capabilities in this specialized field.

3.10. In the months leading up to Mr. Brinker's termination, defendant began to quietly shift Mr. Brinker's responsibilities and reporting relationships. Employees who had previously reported to Mr. Brinker were redirected to report to other supervisors, including Shaun Ewen. At the same time Mr. Brinker was being marginalized, defendant's dimensional control department was actively hiring and remained understaffed, indicating that defendant's need for dimensional control expertise had not diminished.

3.11. On August 24, 2025, while Mr. Brinker was working on-site at the Eli Lilly LP1/X Project in Lebanon, Indiana, he received a telephone call from defendant. On the call were William Harnisch, Cassie Hernandez (defendant's HR Director), Shaun Ewen, and Ron Roeser, defendant's attorney. During the call, Mr. Harnisch informed Mr. Brinker that defendant was laying him off. When Mr. Brinker asked if they were certain about this decision, Mr. Harnisch confirmed that they were. No reason was given for the termination during the telephone call, and no performance-based justification was provided.

3.12. Later that same day, August 24, 2025, defendant sent Mr. Brinker a written layoff letter signed by Cassie Hernandez. The letter stated that Mr. Brinker's "position with LW Survey International, Inc. as President is being terminated because of a layoff, effective Sunday, August 24, 2025." The letter provided no further explanation for the termination and cited no cause or performance deficiencies. The letter informed Mr. Brinker that his final paycheck would include payment for 80.42 hours of accrued but unused paid time off, equivalent to $10,713.55.

3.13. Despite being labeled a "layoff," Mr. Brinker's position was not eliminated. The Eli Lilly LP1/X Project on which Mr. Brinker had been working at the time of his termination continued after his departure and was expected to continue for multiple additional years. Matt Furness, the 27-year-old employee Mr. Brinker had trained, assumed management of the Eli Lilly project and now holds the title of Lead Dimensional Control Project Manager. The dimensional control department continued to operate and remained understaffed at the time of Mr. Brinker's termination, demonstrating that defendant replaced Mr. Brinker with a significantly younger and less experienced employee rather than eliminating the position due to lack of work.

3.14.    The day that Mr. Brinker was laid off, he was asked by Fluor management to come work for them.  The next day, however, Shaun Ewen, went into the Flour office and told their hiring manager that they could not hire Mr. Brinker because there existed a non-compete clause in effect.  Mr. Ewen reemphasized this point with Flour's hiring manager over the Christmas period, as well.

3.15.    Following his termination, defendant paid Mr. Brinker severance at the rate of $10,658.20 bi-weekly through at least January 21, 2026. These severance payments were made at Mr. Brinker's fully restored salary rate. The employment agreements provided that defendant's non-competition clause applied "for a period of up to one (1) year after the termination of his employment, and as Pulsar may desire and so continues to pay his Annual Base Salary, or by receipt of any Unit compensation."

3.16.    On November 25, 2025, Mr. Brinker filed a charge of age discrimination with the Alaska State Commission for Human Rights, which was dual-filed with the Equal Employment Opportunity Commission.  The charge was assigned ASCHR No. J-25-102 and EEOC No. 38A-2026-00010.

3.17.    As a result of his termination, Mr. Brinker suffered significant financial damages. He was forced to break his lease in Indiana at a cost of approximately $5,000.  He incurred approximately $5,000 in costs to ship his household furnishings and belongings from Indiana back to Alaska.  Mr. Brinker was required to withdraw $60,000 from his retirement accounts to meet living expenses, with additional withdrawals anticipated.  After defendant's paid COBRA coverage expired in October 2025, Mr. Brinker became responsible for COBRA premiums of

$2,132 per month. Mr. Brinker has been diagnosed with a cancer recurrence that requires radiation treatment, resulting in significant anticipated out-of-pocket medical expenses.

3.18. Mr. Brinker has actively searched for comparable employment since his termination but has been unsuccessful in securing a position paying wages comparable to his former salary. He declined a position offered through a defendant-affiliated entity that would have paid approximately one-third of his previous compensation and would have required him to work in an inferior role under the supervision of the same company that terminated him.

3.19. Defendant has refused to pay Mr. Brinker the value of his vested SAR equity units, which Mr. Brinker believes totals approximately $230,000. Under the terms of the employment agreements, because defendant terminated Mr. Brinker's employment without cause, all awarded SAR units should have immediately vested at the specified basis values.

3.20. The circumstances surrounding Mr. Brinker's termination demonstrate that defendant's stated reason for termination was pretextual and that the true motive was discriminatory animus based on Mr. Brinker's age. Mr. Brinker was replaced by an employee 33 years younger who possessed substantially less experience and lacked the professional credentials that Mr. Brinker held. Mr. Brinker's salary had been fully restored just four months before his termination, demonstrating that he was meeting performance expectations and generating revenue for defendant. The dimensional control department was actively hiring at the time of the alleged layoff, and Mr. Brinker's work on the Eli Lilly project continued under the direction of his younger replacement. Defendant directed Mr. Brinker to train the younger employee who ultimately replaced him, and then terminated Mr. Brinker after the knowledge transfer was substantially complete. No legitimate business justification supports the decision to

Complaint for Damages and Injunctive Relief:
*Brinker v. L W Survey International, Inc.* Page -8-

terminate an exemplary 60-year-old employee with fifteen years of service and unique expertise while retaining and promoting a 27-year-old employee with a fraction of Mr. Brinker's experience and qualifications.

## IV.  CAUSES OF ACTION

**A.  COUNT I: AGE DISCRIMINATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT**

4.1.    Plaintiff Gordon T. Brinker incorporates by reference all factual allegations set forth in paragraphs 1.1 through 3.19 above.

4.2.    At the time of his termination on August 24, 2025, Mr. Brinker was 60 years old, well within the protected age group under the Age Discrimination in Employment Act, 29 U.S.C. § 623(a)(1).

4.3.    Mr. Brinker was highly qualified for his position and was performing his job duties in an exemplary manner.  He held an Alaska Professional Land Surveyor license and a Certified Federal Surveyor certification.  For six consecutive years preceding his termination, Mr. Brinker was defendant's most billable employee.  In the five months immediately before his termination, he was fully billable on the Eli Lilly project.  Mr. Brinker received annual cost-of-living salary increases and had no documented performance deficiencies or disciplinary actions in his fifteen-year personnel file.

4.4.    Defendant subjected Mr. Brinker to an adverse employment action by terminating his employment on August 24, 2025.

4.5.    Defendant replaced Mr. Brinker with Matt Furness, who was 27 years old at the time, creating a 33-year age gap between Mr. Brinker and his replacement.  Mr. Furness possessed substantially less experience and inferior qualifications compared to Mr. Brinker.  Mr.

Complaint for Damages and Injunctive Relief:
*Brinker v. L W Survey International, Inc.*                                    Page -9-

Furness had approximately seven years of total surveying experience and four and one-half years of dimensional control experience, compared to Mr. Brinker's fifteen years with defendant and decades of specialized expertise. Mr. Furness did not hold a Professional Land Surveyor license or Certified Federal Surveyor certification. Defendant directed Mr. Brinker to train Mr. Furness beginning in October 2021, and Mr. Brinker continued training Mr. Furness and other younger employees until shortly before his termination. The timing of Mr. Brinker's termination, occurring after he had substantially completed the transfer of his specialized knowledge to his younger replacement, supports an inference of age discrimination.

4.6. Defendant's stated reason for Mr. Brinker's termination, that it was a "layoff," was a pretext for unlawful age discrimination. Mr. Brinker was performing exceptionally and was fully billable at the time of his termination. Just four months before his termination, defendant restored Mr. Brinker's salary to $277,113.20 annually, demonstrating that he was meeting performance expectations and generating revenue. Mr. Brinker was working on the ongoing multi-year Eli Lilly project at the time of his termination, and that project continued under the management of his 27-year-old replacement. Rather than eliminating Mr. Brinker's position due to lack of work, defendant replaced him with the significantly younger employee he had trained. The dimensional control department was actively hiring and remained understaffed at the time of the alleged layoff, further demonstrating that defendant's stated reason was false.

4.7. Defendant's violation of the ADEA was willful, committed with knowing or reckless disregard of Mr. Brinker's rights under the statute. Defendant is a sophisticated employer with professional human resources staff and legal counsel. An attorney was present on the telephone call when Mr. Brinker was terminated. The 33-year age disparity between Mr.

Complaint for Damages and Injunctive Relief:
*Brinker v. L W Survey International, Inc.* Page -10-

Brinker and Mr. Furness was obvious and substantial. Defendant's characterization of the termination as a "layoff" was clearly pretextual given that Mr. Brinker's position continued and the department was hiring. Defendant systematically directed Mr. Brinker to train his younger replacement over a period of years, then terminated Mr. Brinker after the knowledge transfer was substantially complete.

4.8.    As a result of defendant's unlawful age discrimination, Mr. Brinker is entitled to all remedies available under the ADEA, including back pay, front pay, liquidated damages pursuant to 29 U.S.C. § 626(b), compensation for lost benefits including the SAR units that would have vested, reinstatement or in lieu thereof front pay, prejudgment interest, attorneys' fees and costs pursuant to 29 U.S.C. § 626(b), and such other relief as the Court deems just and proper.

**B.    COUNT II - AGE DISCRIMINATION IN VIOLATION OF THE ALASKA HUMAN RIGHTS ACT**

4.9.    Plaintiff Gordon T. Brinker incorporates by reference all factual allegations set forth in paragraphs 1.1 through 4.8 above.

4.10.    At the time of his termination on August 24, 2025, Mr. Brinker was 60 years old and a member of the protected class under the Alaska Human Rights Act, AS 18.80.220, which protects individuals age 40 and older from employment discrimination based on age.

4.11.    Mr. Brinker affirms and attests that he was qualified for his position and satisfactorily performing his job duties during the relevant time of his employment with defendant. He held an Alaska Professional Land Surveyor license and a Certified Federal Surveyor certification. For six consecutive years preceding his termination, Mr. Brinker was

Complaint for Damages and Injunctive Relief:
*Brinker v. L W Survey International, Inc.*                                    Page -11-

defendant's most billable employee.  In the five months immediately before his termination, he was fully billable on the Eli Lilly project.  Just four months before his termination, defendant restored Mr. Brinker's salary to $277,113.20 annually, demonstrating that he was meeting performance expectations and generating revenue for the company.

4.12.    Despite his satisfactory performance, defendant terminated Mr. Brinker's employment on August 24, 2025, subjecting him to an adverse employment action.

4.13.    The circumstances of Mr. Brinker's termination give rise to an inference of unlawful age discrimination.  Defendant replaced Mr. Brinker with Matt Furness, who was 27 years old, creating a 33-year age gap.  Mr. Furness possessed substantially less experience and inferior qualifications, with no Professional Land Surveyor license or Certified Federal Surveyor certification.  Defendant directed Mr. Brinker to train Mr. Furness over a period of years and then terminated Mr. Brinker after the knowledge transfer was substantially complete.  The dimensional control department was actively hiring at the time of the alleged layoff, and Mr. Brinker's position was not eliminated but instead filled by his significantly younger replacement.

4.14.    Alaska law prohibits employers from discriminating against employees age 40 and over in termination and other terms and conditions of employment.  Defendant's conduct constituted unlawful employment discrimination in violation of Alaska's public policy against age-based employment decisions.

4.15.    Mr. Brinker affirms and attests that defendant's conduct, as alleged in paragraphs 4.9 through 4.14, constituted a willful and/or reckless violation of AS 18.80.220, and that such conduct was outrageous and undertaken with knowledge of or reckless indifference to Mr. Brinker's rights under Alaska law.

Complaint for Damages and Injunctive Relief:
*Brinker v. L W Survey International, Inc.*                                    Page -12-

4.16.    As a remedy for defendant's violation of the Alaska Human Rights Act, plaintiff Gordon T. Brinker requests all available remedies under Alaska law, including compensatory damages for back pay, front pay, and lost benefits, emotional distress damages, punitive damages pursuant to AS 09.17.020, attorneys' fees and costs pursuant to AS 18.80.130, and such other relief as the Court deems just and proper.

**C.    COUNT III - RETALIATION IN VIOLATION OF THE ADEA AND AHRA**

4.17.    Plaintiff Gordon T. Brinker incorporates by reference all factual allegations set forth in paragraphs 1.1 through 4.16 above.

4.18.    On November 25, 2025, Mr. Brinker filed a formal charge of age discrimination with the Alaska State Commission for Human Rights.  The charge was dual-filed with the Equal Employment Opportunity Commission pursuant to Mr. Brinker's request.  The charge was assigned ASCHR No. J-25-102 and EEOC No. 38A-2026-00010.  In this charge, Mr. Brinker alleged that defendant discriminated against him on the basis of his age, sixty, in violation of AS 18.80.220 and the Age Discrimination in Employment Act of 1967, as amended.

4.19.    The filing of administrative charges alleging unlawful employment discrimination is quintessential protected activity under both the ADEA, 29 U.S.C. § 623(d), and the Alaska Human Rights Act, AS 18.80.220(a)(4).  Both statutes explicitly protect employees from retaliation for opposing unlawful discrimination or participating in discrimination proceedings.

4.20.    After Mr. Brinker filed his administrative charges, defendant took adverse action against him by invoking the non-competition clause in his employment agreement and contacting Fluor Daniels, a prospective employer and a client of defendant, to prevent Mr. Brinker from being hired.  Fluor Daniels had offered Mr. Brinker employment following his

Complaint for Damages and Injunctive Relief:
*Brinker v. L W Survey International, Inc.*                                          Page -13-

termination. Defendant's interference with this employment opportunity occurred despite the fact that the non-competition clause was expressly conditioned on defendant continuing to pay Mr. Brinker's annual base salary.

4.21.   Defendant's invocation of the non-competition clause and interference with Mr. Brinker's prospective employment at Fluor Daniels constituted an adverse action because it materially affected Mr. Brinker's ability to obtain comparable employment in his field and caused him economic harm.  The interference prevented Mr. Brinker from mitigating his damages and deprived him of employment opportunities for which he was highly qualified.

4.22.   The temporal proximity between Mr. Brinker's filing of administrative charges on November 25, 2025, and defendant's subsequent invocation of the non-competition clause establishes a causal connection between the protected activity and the adverse action.  Defendant had not previously invoked the non-competition clause despite Mr. Brinker's full knowledge of the employment market and relationships with industry clients, suggesting that the invocation was motivated by animus toward Mr. Brinker's protected activity rather than legitimate business concerns.

4.23.   Both the ADEA and the Alaska Human Rights Act prohibit employers from retaliating against employees who oppose unlawful discrimination or who participate in discrimination proceedings.  Defendant's conduct in interfering with Mr. Brinker's post-termination employment as punishment for filing discrimination charges violated these clear statutory protections.

4.24.   As a result of defendant's retaliatory conduct, Mr. Brinker is entitled to all remedies available under the ADEA and the Alaska Human Rights Act, including compensatory

Complaint for Damages and Injunctive Relief:
*Brinker v. L W Survey International, Inc.* Page -14-

damages for lost employment opportunities and wages, emotional distress damages, punitive damages, attorneys' fees and costs, injunctive relief prohibiting further retaliation, and such other relief as the Court deems just and proper.

**D.     COUNTS IV AND V: BREACH OF EMPLOYMENT CONTRACT**

4.25.    Plaintiff Gordon T. Brinker incorporates by reference all factual allegations set forth in paragraphs 1.1 through 4.24 above.

4.26.    The employment agreements dated January 1, 2021, and March 31, 2022, between Mr. Brinker and defendant, and its affiliates Pulsar Operational Boundary, Inc. and L.W. Survey Canada, ULC, are governed by Colorado law pursuant to their express choice-of-law provision.

4.27.    Under the employment agreements, Mr. Brinker was entitled to Stock Appreciation Rights (SAR) equity units in L.W. Survey Canada, ULC, with specified basis values.  The agreements expressly provided that "if Pulsar terminates Brinker's employment without cause, all awarded Units shall immediately vest" at the specified basis values totaling approximately $230,000.

4.28.    On August 24, 2025, defendant terminated Mr. Brinker's employment, characterizing the termination as a "layoff" and providing no assertion or establishment of any cause under the employment agreements' definition of "cause."  Therefore, the termination was without cause as a matter of contract interpretation, and all SAR units awarded to Mr. Brinker immediately vested pursuant to the express terms of the employment agreements.

Complaint for Damages and Injunctive Relief:
*Brinker v. L W Survey International, Inc.*                                                    Page -15-

4.29. Defendant has failed and refused to pay Mr. Brinker the value of these vested units, which amounts to approximately $230,000 based on the contracts' valuation formula. This failure to pay the vested units constitutes a breach of the employment agreements.

4.30. The employment agreements contained an express provision prohibiting reduction of Mr. Brinker's salary without his consent, stating: "Annual Base Salary shall not be reduced after any increase without Brinker's consent."

4.31. The agreements further provided that if salary was reduced, it would be "restored at time company meets profitability requirements and salaries are restored, or Gordon returns to the field and is billable." In April 2025, Mr. Brinker's salary was restored to $10,658.20 bi-weekly when he became fully billable on the Eli Lilly project, demonstrating that the conditions for restoration had been satisfied.

4.32. Defendant terminated Mr. Brinker just four months later while he remained fully billable, effectively depriving him of the benefit of the restored salary and the future compensation to which he was entitled under the agreements' terms. This termination, removing Mr. Brinker from the fully billable status that triggered the salary restoration, constituted a breach of the salary non-reduction clause and the implied covenant of good faith and fair dealing.

4.33. As a result of defendant's breaches of the employment agreements, Mr. Brinker is entitled to contract damages under Colorado law, including the value of the unpaid SAR units, lost wages resulting from the wrongful termination, prejudgment interest at the applicable Colorado rate, attorneys' fees as provided by the contracts or applicable Colorado law, costs, and such other relief as the Court deems just and proper.

Complaint for Damages and Injunctive Relief:
*Brinker v. L W Survey International, Inc.* Page -16-

4.34. These breach of contract claims are timely under Colorado's three-year statute of limitations for written contracts.

**F.** **COUNT VI: TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

4.35. Plaintiff Gordon T. Brinker incorporates by reference all factual allegations set forth in paragraphs 1.1 through 4.34 above.

4.36. Following Mr. Brinker's termination on August 24, 2025, Fluor Daniels offered Mr. Brinker employment in a position within the surveying and dimensional control industry. This employment opportunity represented a prospective economic relationship that, if consummated, would have provided Mr. Brinker with income, benefits, and professional opportunities comparable to his previous position with defendant.

4.37. Defendant had knowledge of this prospective employment relationship because Fluor Daniels was a client and business contact of defendant. Through its business operations and industry relationships, defendant learned of Mr. Brinker's job offer from Fluor Daniels.

4.38. Defendant intentionally interfered with this prospective relationship by invoking the non-competition clause contained in Mr. Brinker's employment agreements and directly contacting Fluor Daniels to communicate that Mr. Brinker could not be hired due to the non-compete restriction. This interference was calculated to prevent the prospective employment relationship from being consummated.

4.39. Defendant's interference was improper for multiple reasons. First, the non-competition agreement was expressly conditioned on defendant continuing to pay Mr. Brinker's base salary, which defendant was not doing beyond the limited severance period. Second, defendant's selective invocation of the non-compete after Mr. Brinker filed discrimination

Complaint for Damages and Injunctive Relief:
*Brinker v. L W Survey International, Inc.* Page -17-

charges on November 25, 2025, suggests the purpose was retaliatory rather than protection of legitimate business interests. Third, defendant's motive was to punish Mr. Brinker for exercising his statutory rights to file EEOC and ASCHR charges rather than any legitimate competitive concern. Defendant had no legal justification or privilege for this interference.

4.40. As a direct and proximate result of defendant's interference, Mr. Brinker lost the employment opportunity with Fluor Daniels and the income, benefits, and other economic advantages it would have provided. This interference prevented Mr. Brinker from mitigating his damages and obtaining comparable employment in his specialized field.

4.41. Defendant's conduct was intentional, willful, and malicious, and violated Alaska public policy against retaliation for exercising civil rights. Defendant's interference was outrageous and reckless, undertaken with knowledge that it would harm Mr. Brinker economically.

4.42. As a result of defendant's tortious interference with prospective economic advantage, Mr. Brinker is entitled to compensatory damages for the lost employment opportunity, emotional distress damages, punitive damages given the malicious and retaliatory nature of the conduct, attorneys' fees and costs as available under Alaska law, and such other relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff Gordon T. Brinker hereby demands a trial by jury pursuant to Fed. R. Civ. P. 38(b) on all claims and issues for which he has a right to jury trial.

Complaint for Damages and Injunctive Relief:
*Brinker v. L W Survey International, Inc.* Page -18-

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff Gordon T. Brinker requests judgment against defendant LW Survey International, Inc., as follows:

1.      Full and complete payment of all damages related to plaintiff's claims against defendant, including violation of the ADEA, the Alaska Human Rights Act, breach of employment contract, and tortious interference, including back pay, front pay, lost benefits, the value of unpaid SAR equity units of approximately $230,000, compensatory damages for lost employment opportunities, emotional distress, liquidated damages pursuant to 29 U.S.C. § 626(b) for willful violation of the ADEA, punitive damages to the extent permitted under the Alaska Human Rights Act and Alaska tort law, attorneys' fees and costs pursuant to 29 U.S.C. § 626(b), AS 18.80.130, and any other applicable law, prejudgment and post-judgment interest at the maximum rate permitted by law, and other permitted remedies, with the exact amounts to be proven at trial.

2.      Plaintiff Gordon T. Brinker requests reinstatement to his position from which he was unlawfully terminated, or if the workplace has become impermissibly hostile, future damages going forward to his expected date of retirement.

3.      A permanent injunction prohibiting defendant from further retaliation against plaintiff, including enforcement of the non-compete agreement.

4.      Plaintiff Gordon T. Brinker requests whatever additional damages the Court considers appropriate to award given the severity of defendant's conduct.

Complaint for Damages and Injunctive Relief:
*Brinker v. L W Survey International, Inc.*                                                    Page -19-

Dated: April 15, 2026

Isaac D. Zorea
ABA No.  0011090
Counsel for Gordon T. Brinker
P.O. Box 90844
Anchorage, Alaska 99509
907-830-1385
izorea.law@gmail.com

Complaint for Damages and Injunctive Relief:
*Brinker v. L W Survey International, Inc.*　　　　　　　　　　　　　　Page -20-